IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SHEREA RAMSEUR, KRISTINA POYNTER, JARED BATES, KEVA D. PIPPIN, LINDA J. CUNDALL, and GINA LOEHR, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LIFEPOINT HEALTH, INC., THE BOARD OF DIRECTORS OF LIFEPOINT HEALTH INC., LIFEPOINT HEALTH RETIREMENT COMMITTEE, and JOHN DOES 1-30,<br><br>Defendants. | Case No. 3:24-cv-00994<br><br>JUDGE CAMPBELL<br>MAGISTRATE JUDGE NEWBERN |

## **MEMORANDUM**

Pending before the Court is a motion to dismiss the Amended Complaint filed by Defendants Life Point Health, Inc., the Board of Directors of Lifepoint Health, Inc., and Lifepoint Health Retirement Committee (collectively "Defendants"). (Doc. No. 26). Plaintiffs filed a response in opposition (Doc. No. 34), and Defendants filed a reply (Doc. No. 36). The parties also filed supplemental briefing based on the Sixth Circuit's decision in *England v. DENSO International America Inc.*, 136 F.4th 632 (6th Cir. 2025), which was decided after the briefing on the motion to dismiss was complete. (*See* Doc. Nos. 43, 44).

For the reasons set forth below, Defendants' Motion to Dismiss will be DENIED.

# I. BACKGROUND

Plaintiffs Sherea Ramseur, Kristina Poynter, Jared Bates, Keva D. Pippin, Linda J. Cundall, and Gina Loehr (collectively, "Plaintiffs") are participants of LifePoint Health's Retirement Plan (the "Plan" or "Lifepoint Plan"), which is a 401(k) defined contribution plan. Plaintiffs bring claims against Defendants on behalf of themselves and putative class members pursuant to Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. Plaintiffs allege Defendants breached their fiduciary duties of loyalty and prudence by failing to control the Plan's administrative and record keeping costs ("RKA" costs).

Plaintiffs argue there is circumstantial evidence that plausibly suggests that the Plan paid unreasonable RKA costs and/or that Defendants failed to engage in a prudent process to evaluate RKA costs. At all times from August 2018 to the present, the Plan had over $1 billion in assets, which qualifies is at a "jumbo plan," a designation afforded to only 0.1 percent of plans nationwide. (Am. Compl., Doc. No. 21 at ¶¶ 3, 4). The Plan was also in the top 0.1 percent of plans nationwide in terms of participants, which numbered between 41,501 and 54,532 between 2018 to 2022. (*Id*. ¶ 5).

Plaintiffs allege that recordkeeping services include bundled services offered by all national recordkeepers for a per capita price, and à la carte services for additional fees based on the services used by individual participants. (*Id*. ¶¶ 58-60). Plaintiffs allege the Plan has had three recordkeepers from 2018 through the present – Wells Fargo, Prudential, and Vanguard – and that these recordkeepers provided "services in line with routine bundled and à la carte service categories." (*Id*. ¶¶ 79-80). The Amended Complaint gives examples of the services provided

drawn from the Plan's 2020 Form 5500, Schedule C.[1] (*Id*. ¶ 80). In 2020, the Plan had three recordkeepers, and these recordkeepers received compensation from the Plan for overlapping service categories. (*Id*.).

Plaintiffs allege the Plan's RKA costs between 2018 and 2021 averaged $48.57 per participant, which was almost two times the average fee of $25.58 per participant for comparable plans with assets of over $1 billion and a similar number of participants that received similar recordkeeping and administration services. (*Id*. ¶¶ 100-105). Plaintiffs also point to other plans that that have recording keeping expenses lower than this average, including plans with fewer assets and participants and therefore, presumably less bargaining leverage. (*Id*. ¶¶ 95, 98, 103).

Plaintiffs contend that Defendants should have conducted a request for proposal ("RFP") at regular intervals to ensure that RKA costs were reasonable. (*Id*. ¶ 69). Plaintiffs concede they do not know whether Defendants conducted RFPs and "do not have actual knowledge of the specifics of Defendants' decision-making process with respect to the Plan, including Defendants' processes (and execution of such) for monitoring recordkeeping and administration costs, because this information is solely within the possession of Defendants prior to discovery." (*Id*. ¶ 76). They argue, that if Defendants had conducted an RFP it would have resulted in a "significant reduction in RKA costs" and the fact that the RKA costs paid by the Plan were relatively constant from 2016 to 2020, suggests that Defendants did not conduct an RFP. (*Id*. ¶¶ 82-84). In support of this conclusion, Plaintiffs point to another plan that reduced recordkeeping expenses by 30% when it changed recordkeepers from Vanguard to Prudential in 2019. (*Id*. at ¶ 85).

---

[1] The Form 5500 is the "Annual Return/Report of [an] Employee Benefit Plan." *See Mator v. Wesco Dist., Inc.*, 102 F.4th 172, 181 (3d Cir. 2024). It is "a joint creation of the IRS, the Department of Labor, and the Pension Benefit Guarantee Corporation." *Id*.

In summary, Plaintiffs contend the Plan could have obtained comparable recordkeeping and administrative services at a lower cost and that the failure to do so violated their duties of prudence (Count I – against Lifepoint Health Retirement Committee) and adequate monitoring (Count II – against Lifepoint Health Inc. and its Board of Directors). Defendants move to dismiss Plaintiffs' Amended Complaint pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6) for failure to state a claim upon which relief can be granted "because the Complaint fails to allege how the plan's recordkeeping fees were excessive in relation to the value of the services rendered." (Doc. No. 26).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for failure to state a claim upon which relief can be granted. For purposes of a motion to dismiss, a court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, to state a claim for relief that is plausible on its face. *Id*. at 678. A claim has facial plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. In reviewing a motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). If plaintiffs do not "nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

In considering a Rule 12(b)(6) motion, the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to a defendant's motion to dismiss provided they are referred to in the Complaint and are

4

central to the claims. *Bassett v. National Collegiate Athletic Assn.*, 528 F.3d 426, 430 (6th Cir. 2008).

### III. ANALYSIS

"ERISA required plan fiduciaries to discharge their duties 'with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *England v. DENSO Int'l Am. Inc.*, 136 F.4th 632 (6th Cir. 2025) (citing 29 U.S.C. § 1104(a)(1)(B)). "Because the content of the duty of prudence turns on the 'circumstances prevailing' at the time the fiduciary acts, the appropriate inquiry will necessarily be context specific." *Id.* at 636 (quoting *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014)). "For excessive-recordkeeping claims, […], a plaintiff must 'allege that the fees were excessive relative to the services rendered' or establish 'other factors relevant to determining whether a fee is excessive under the circumstances.'" *Id.* at 636-37 (6th Cir. 2025). Usually, plaintiffs attempt to make this showing through comparison to a "meaningful benchmark." *Id.* But if the complaint provides no details about the specific types or quality of services that the comparator plans received relative to those the Plaintiffs' Plan received, the Court cannot reasonably infer a breach of the duty of prudence. *Id.* at 637.

In *England*, the Sixth Circuit affirmed dismissal of a complaint alleging the plan overpaid for recordkeeping and administrative services. 136 F.4th at 639. Defendants argue this Court should reach the same conclusion here. They argue Plaintiffs' have failed to state claims for breach of fiduciary duty related to RKA costs Plaintiffs have not provided enough information about the recordkeeping services obtained by those plans as compared to the recordkeeping services of the Lifepoint Plan to raise a plausible inference that the RKA costs of the Lifepoint Plan were

5

excessive and comparison with other plans based solely on price is insufficient. Defendants acknowledge that Plaintiffs have provided some evidence of the recordkeeping services provided but argue that comparing service codes is an unreliable method to determine whether a plan's RKA costs are excessive, because the service codes only show general categories of service, not the specific services provided. In addition, Defendants argue that because the code lists are only examples of categories of services provided, not comprehensive lists of services, the Lifepoint Plan could have been getting more services than the list reflects.

Defendants' motion to dismiss repeatedly oversteps the boundaries of Rule 12(b)(6) by improperly weighing the allegations, drawing inferences in their own favor, and inviting the Court to consider matters outside the pleadings. For example, Defendants argue that Plaintiffs' comparison of plan fees is "misleading" and "shallow" because it does not "describe the package of services" that each comparator plan received or include "the entire list" of service codes. *See* (Doc. No. 26-1 at 16). They contend that Plaintiffs omitted surrounding language from the 2020 Form 5500 for the Philips Plan excerpt and urge the Court to disregard Plaintiffs' allegations because Defendants believe the excerpt is "misleading." (*Id.* at 13). But at the motion to dismiss stage, such factual disputes and competing interpretations are irrelevant; the Court must assume Plaintiffs' allegations are true and draw all reasonable inferences in their favor. *Iqbal*, 556 U.S. at 678; *Directv*, 487 F.3d at 476.

Plaintiffs respond that they have provided enough detail to raise a plausible inference that the Plan could have obtained comparable recordkeeping services at a lower cost and that Defendants, therefore, violated their duty of prudence by incurring unreasonable recordkeeping fees. Plaintiffs note that, unlike the plaintiffs in *England* who "provided no details about the specific types or quality of services" provided by the Lifepoint Plan's recordkeepers, the

Complaint lists the types of services provided from the Plan's 2020 Form 5500, Schedule C. (See Am. Compl., Doc. No. 21 at ¶ 80). Plaintiff also points to allegations that three entities perform RFK services for the plan in 2020 with some overlapping service categories. (*See id.*). In addition, whereas the *England* plaintiffs admitted that there were "variations in the level and quality of RKA services" provided to the comparator plans, *see England*, 136 F.4th at 637, Plaintiffs allege the Lifepoint Plan and the comparator plans were receiving similar services. (*Id.* ¶ 105). Moreover, in *England*, the plaintiffs relied on comparator plans that were not actually comparable. *England*, 136 F.4th at 637 (noting that six of the alleged comparators had assets less than $500 million and only three plans had assets over $1 billion like the plaintiffs' plan as compared to plaintiffs' plan assets of over $1 billion). Here, Plaintiff has provided information showing that plans with assets over $1 billion and a comparable number of participants had a significantly lower cost per participant for what are alleged to be similar services.

Construing the allegations in the light most favorable to Plaintiffs, these allegations are sufficient to plausibly state a claim that Defendants violated their duties of prudence and adequate monitoring with regard to the Plan's recordkeeping and administrative costs.

## IV. CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss the Amended Complaint (Doc. No. 26) will be **DENIED**. An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE